UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DERRICK L. THOMAS, SR.,

    Plaintiff,

vs.                              CASE NUMBER:

UNIVERSAL PROTECTION SERVICES,
LLC, d/b/a Allied Universal Security
Services, a Foreign Limited Liability
Company,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, DERRICK L. THOMAS, SR., (hereinafter "THOMAS" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against defendant, UNIVERSAL PROTECTION SERVICES, LLC, d/b/a Allied Universal Security Services, (hereinafter "Allied" or "Defendant") and states the following:

**JURISDICTION AND VENUE**

1. This is a civil action by Plaintiff against his former employer seeking damages resulting from violations of 42 U.S.C. 1981, the Civil Rights Act of 1886.

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

3. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) because the events out of which this claim arose occurred in Hillsborough County, which is located within the Middle District of Florida.

4. Pursuant to Rule 1.02(b)(4), Local Rules of the Middle District of Florida, the Tampa Division is the proper division for this cause of action.

**PARTIES**

1

5. The Plaintiff is DERRICK L. THOMAS, SR., an African American male citizen of the United States residing in Hillsborough County Florida. THOMAS was an employee of Allied from June 1997 until November 2, 2018.

6. Defendant, ALLIED, is a Delaware corporation with its principal place of business located at 1551 N. Tustin Ave., Suite 650, Santa Ana, California. ALLIED provides security services to several locations within the Middle District of Florida and throughout the state of Florida.

## GENERAL ALLEGATIONS

7. In 2006 Thomas became the Public Safety Director for ALLIED at the International Plaza in Tampa, Florida. Thomas was the only African American Director in the South East Region.

8. Thomas worked hand in hand with Gary Malfroid (white male), the General Manager of The International Plaza. Mr. Malfroid was an employee of Taubman Properties, a nationwide retail company that owned the International Plaza.

9. In February 2017 Kevin Corbett (white male) became Thomas' Regional Manager.

10. In April 2017, Corbett contrived a scheme to humiliate Thomas and make sure he knew he was not respected at Allied. To do this, Corbett purchased a salt-lick hanging from a rope on Amazon and had it shipped to the office where Thomas worked at the International Plaza. The salt-lick was the size of a grapefruit and had a rope through it so that it could be tied around an animal's neck.

11. On April 26, 2017 Corbett spoke with Thomas about his position with Allied. He told Thomas that they had an important lunch with Malfroid at Doc-B's, a restaurant at International Plaza. He also demanded total loyalty from Thomas. He then told Thomas that a package was coming for him that day.

12. Just before leaving for lunch, Thomas learned that the Amazon package would be delivered around noon and offered (via text message) to pick the package up on his way to the lunch. Corbett told Thomas to get the package but make sure not to open it before the lunch with Malfroid.

13. Thomas met the Amazon truck and accepted the package and went to meet Corbett and Malfroid for lunch at Doc-B's.

14. When Thomas arrived with the package, Malfroid and Corbett were waiting for him. Corbett told him to open the box. Thomas opened the box and took out the salt-lick. Corbett then snickered and told him to put it around his neck. Laughing and grinning, he told him to lick it. Thomas was shocked by this and could not believe that it was happening. It gave him alarming insight into how Corbett saw him and his role within the company. Corbett told him to put the rope around his neck, but Thomas refused despite Corbett's repeated requests.

15. When Thomas got back to the office, Corbett again told him to tie the rope around his neck and pose for a picture. Thomas declined to put the rope around his neck, but Corbett insisted that he needed him to do it. Though Thomas refused to place the rope around his neck he eventually agreed to allow Corbett to take his picture with the salt-lick.

16. Corbett then sent an email with the picture to Joe Marcello, Senior Vice President over Retail and Dallas Aldridge, the other Regional Manager for the South East Region.

17. In October 2017 Thomas discovered that his Assistant Account Manager, Bruce Crump (white male), was sleeping on the job. Thomas provided proof of this to Corbett and Corbett promptly promoted Crump to become Director over the Westshore Mall property in Tampa. Corbett then gave Crump a raise and improved his position by staffing an Assistant Account Manager. Crump had previously served as Director of Westshore without the benefit of an Assistant Director.

18. From October 2017 to May 2018 Corbett refused to approve a replacement for Thomas' Assistant Director position, leaving that position vacant. This placed a tremendous burden on Thomas as this was the Holiday season and the busiest time of year for the International Mall. Thomas was also forced to perform the roles of Account Manager and Assistant Account Manager during this time.

19. In October 2017, while Thomas was on bereavement leave, Corbett required him to be available for all calls at all hours. This was not done to non-African American Directors under the same circumstances.

20. At the end of the 2017 calendar year, Thomas was not given a pay raise as other Non-African American Directors were.

21. In January 2018, Thomas notified ALLIED that he believed he had been discriminated against on the basis of his race and subjected to a hostile working environment.

22. Shortly after, in February 2018, Corbett met with David Collins (white male) to recruit him to become the Assistant Manager under Thomas. Corbett told Collins that Thomas would be out of his position soon and that Collins would be able to take over as Director.

23. ALLIED eventually moved Thomas from under the management of Corbett to the other Regional Manager, Dallas Aldridge (white male).

24. Mr. Alridge began pressing Thomas to hand over all of his responsibilities to David Collins, the new Account Manager.

25. Alrdige made reference to the Salt-Lick incident at a lunch with Collins and snickered when he mentioned it.

26. In July of 2018, Collins resigned his position as Assistant Account Manager.

27. Thomas attempted to hire two separate candidates Daniel Boco (African American male) and Richard Russel (African American male) but Alridge rejected both candidates for spurious reasons.

28. Alridge then hired Jason Larson (white male) to be the Assistant Account Manager under Thomas. Mr. Larson had demonstrated poor judgment and lack of qualifications to serve as the Assistant Account Manager in his interview for the position.

29. After placing Larson in the Assistant Account Manager position, Alridge showed that he preferred Larson and hoped to replace Thomas with Larson in the role of Director.

30. On November 1, 2018, Thomas resigned from ALLIED rather than continue working in the hostile work environment.

31. As a result of Defendant's unlawful conduct described above, Thomas has had to retain counsel to represent his rights and is obligated to pay attorney's fees and costs to the undersigned for legal services.

## COUNT I

**Racial Discrimination in violation of 42 USC 1981**

32. Thomas reaffirms and realleges the preceding paragraphs.

33. Thomas is African American and as such is protected from discrimination in his employment on the basis of his race.

34. Thomas was qualified to perform his job as Director of Security for International Plaza for Defendant.

35. Defendant took adverse employment action against Thomas by subjecting him to a hostile work environment as described above.

36. Thomas' race was a motivating factor in the adverse actions.

37. As a direct and proximate result of Defendant's actions, Thomas has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

38. By virtue of the actions described herein, ALLIED has violated § 1981.

39. Defendant's actions permitting the on-going harassment of Thomas were reckless, willful and/or malicious.

40. Thomas' losses are permanent and continuing and Thomas will continue to suffer losses in the indefinite future.

WHEREFORE, Thomas demands that the Court enter Judgment against Defendant, and:

 a. Direct Defendant to provide back pay;

 b. Direct Defendant to reinstate Thomas or if that is not feasible, award him front pay;

 c. Direct Defendant to make Thomas whole by compensating him for mental anguish, emotional damages, loss of the capacity of the enjoyment of life, and humiliation;

 d. Direct Defendant to pay reasonable attorney's fees and costs associated with the prosecution of this lawsuit;

 e. Award punitive damages;

 f. Award Interest on any amount awarded; and

 g. Grant any other award or equitable relief the Court finds just and proper.

## COUNT II

**Retaliation in violation of 42 USC 1981**

41. Thomas reaffirms and realleges the preceding paragraphs.

42. Thomas is African American and as such is protected from discrimination in his employment on the basis of his race.

43. Thomas engaged in a protected activity when he complained of a hostile work environment based on his race.

44. Thomas was qualified to perform his job as Director of Security for International Plaza for Defendant.

45. Defendant took adverse employment action against Thomas by subjecting him to a hostile work environment as described above.

46. Thomas' report of a hostile work environment based on race was a motivating factor in Defendant's adverse actions.

47. As a direct and proximate result of Defendant's actions, Thomas has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

48. By virtue of the actions described herein, ALLIED has violated § 1981.

49. Defendant's actions permitting the on-going hostile work environment and retaliation for reporting racial discrimination were reckless, willful and/or malicious.

50. Thomas' losses are permanent and continuing and Thomas will continue to suffer losses in the indefinite future.

WHEREFORE, Thomas demands that the Court enter Judgment against Defendant, and:

 a. Direct Defendant to provide back pay;

 b. Direct Defendant to reinstate Thomas or if that is not feasible, award him front pay;

 c. Direct Defendant to make Thomas whole by compensating him for mental anguish , emotional damages, loss of the capacity of the enjoyment of life, and humiliation;

 d. Direct Defendant to pay reasonable attorney's fees and costs associated with the prosecution of this lawsuit;

 e. Award punitive damages;

 f. Award Interest on any amount awarded; and

 g. Grant any other award or equitable relief the Court finds just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of the preceding claims.

        */s/ Gary L. Printy, Jr.*
        GARY L. PRINTY JR., Esq.
        Florida Bar No. 41956
        JASON IMLER, Esq.
        Florida Bar No. 1004422
        Printy & Printy, P.A.
        3411 W Fletcher Ave, Suite A
        Tampa, Florida 33618
        (P): (813) 434-0649
        (F): (813) 423-6543
        garyjr@printylawfirm.com
        Jason.imler@printylawfirm.com
        e-service@printylawfirm.com